UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-9206-GW(PLAx) | Date | August 31, 2020 |
|---|---|---|---|
| Title | *Keairra Haeggans, et al. v. G2Secure Staff, L.L.C., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Marcus J. Bradley | Kathy H. Gao |
| | Robert J. Hendricks |

**PROCEEDINGS:** **TELEPHONIC HEARING ON PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [80]; and PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE PAYMENT [81]**

Court and counsel confer. The Court's Tentative circulated and attached, is adopted as its Final Ruling. Plaintiffs' Motions are GRANTED. New proposed order and judgment are to be filed forthwith.

| | : | 01 |
|---|---|---|
| | Initials of Preparer | JG |

*Heaggans v. G2 Secure Staff, L.L.C., et al.*, Case No. 2:17-cv-09206-GW-(PLAx)
Tentative Rulings on: (1) Motion for Final Approval of Class Action Settlement, and (2) Motion for Attorneys' Fees, Costs, and Class Representative Service Payment

## I. Background

Plaintiff Keairra Heaggans ("Plaintiff") moves for final approval of a class action settlement, an award of attorneys' fees and costs to her attorneys (along with other disbursements from the settlement fund), and a class representative "service payment" in this action she brought against defendants G2 Secure Staff, L.L.C. and G2 Secure Staff CA, L.P. (collectively, "Defendants"). At the time of settlement, the operative complaint was the Class and Collective Action First Amended Complaint ("FAC"). The FAC, filed February 22, 2019, contains claims for: 1) failure to pay minimum wages, pursuant to California Labor Code § 1194, 2) failure to pay overtime compensation, pursuant to Welfare Commission Orders and California Labor Code §§ 510 and 1194, 3) failure to pay wages at time of termination, pursuant to California Labor Code §§ 201-203, 4) failure to provide proper wage statement, pursuant to California Labor Code § 226, 5) unfair business practices, pursuant to California Business and Professions Code § 17200, 6) violation of California Labor Code §§ 2698, et seq., 7) missed meal and rest breaks in violation of California Labor Code §§ 200, 226.7, 512, and 12 CCR § 11040, and 8) failure to pay all wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"). *See* Docket No. 25; *see also* Docket Nos. 23-24. The Court granted preliminary approval of the instant settlement on May 15, 2020 (with a corrected order entered on May 27, 2020). *See* Docket Nos. 75, 77.

## II. Analysis

### A. Jurisdiction

This Court has subject matter jurisdiction over this action based both on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), and on the existence of the FLSA claim (along with supplemental jurisdiction pursuant to 28 U.S.C. § 1367). *See* FAC ¶¶ 5, 8; Notice of Removal ¶¶ 10-29. It also has personal jurisdiction over Defendants. *See* FAC ¶ 6.

### B. Notice

Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980). The notice process – which the Court ordered and the parties followed – involved mailing notice to class members via First Class mail. *See* Declaration of Lindsay Kline Regarding Notice and Settlement Administration ("Kline Decl."), Docket No. 80-3, ¶¶ 3, 9-10.

Here, the Court-approved class action settlement administrator reports that notices were mailed to 7,474 class members, and only 86 of those notices were ultimately undeliverable because of returned mail and failure to locate a suitable address for re-delivery. *See* Declaration of Marcus J. Bradley in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Class

Representative Service Payment ("Bradley Decl."), Docket No. 80-1, ¶¶ 6-7; Kline Decl., ¶¶ 6-10 & Exh. A; Supplemental Declaration of Lindsay Kline Regarding Notice and Settlement Administration ("Kline Supp. Decl."), Docket No. 82, ¶ 10.

The Court has determined that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### C. Certification of the Class/Subclasses

As part of its order preliminarily-approving the settlement, the Court certified a class, for settlement purposes only, as follows: "[A]ll current and former non-exempt individuals who were employed by Defendant G2 Secure Staff, L.L.C. in California at any time from October 9, 2016 through the date the Court signs this Order (date of preliminary approval of the Settlement Agreement)." Docket No. 77, at 3:15-18.[1]

It also certified two subclasses at that time (and again, for settlement purposes only). The first, a "Wage Statement Subclass," was defined as "all current and former non-exempt individuals who were employed by Defendant G2 Secure Staff, L.L.C. in California and who received at least one wage statement with an 'Adjustment' and/or 'Diff' line item at any time from October 17, 2016 through the Preliminary Approval Date of the Settlement." *Id.* at 3:19-23. The second, a "Former Employee Subclass," was defined as "all former non-exempt individuals who were employed by Defendant G2 Secure Staff, L.L.C. in California at any time from October 9, 2016 through the Preliminary Approval Date and whose employment ended on or before the Preliminary Approval Date." *Id.* at 3:25-4:2. The Court now makes final the certification (for settlement purposes) of the class and two subclasses, for the reasons addressed in connection with the preliminary approval proceedings. *See* Docket Nos. 28, 33, 45, 56, 62, 71, 73, 75, 77.

### D. The Merits of the Settlement

#### 1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires court approval. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit previously instructed district courts that, in determining whether or not to approve a class settlement in accordance with Rule 23(e), the court could consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and

---

[1] The proposed order submitted with the instant motion replaces "the date the Court signs this Order (date of preliminary approval of the Settlement Agreement)" with "May 15, 2020," and makes similar changes to the subclasses' definitions. Docket No. 83, at 3:7-19.

2

>views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). That list was not intended to be exhaustive, and a court is required to consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625.

Recent amendments to Rule 23 of the Federal Rules of Civil Procedure have formalized the consideration somewhat further. Now, in order for a court to determine that a settlement is "fair, reasonable, and adequate," the court must first consider whether:

>(A) the class representatives and class counsel have adequately represented the class;
>
>(B) the proposal was negotiated at arm's length;
>
>(C) the relief provided for the class is adequate, taking into account:
>
>>(i) the costs, risks, and delay of trial and appeal;
>>
>>(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>>(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>>(iv) any agreement required to be identified under Rule 23(e)(3)[2]; and
>
>(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Clearly these rule-based mandatory considerations overlap with certain of the factors the Ninth Circuit previously established as permissible to consider.

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but

---

[2] Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

whether it is fair, adequate and free from collusion." *Id.* at 1027.

### 2. The Settlement is Fair

#### a. *The Settlement Enjoys a Presumption of Fairness*

Generally speaking, courts afford a presumption of fairness to a settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). *But see Roes, 1-2 v. SFBSC Mgmt., Inc.*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019) (calling into question this presumption after recent amendments to Rule 23(e)). Plaintiffs – who are represented by experienced counsel, *see* Bradley Decl., ¶¶ 15, 18 – reached a settlement following two mediation sessions. *See* Declaration of Marcus J. Bradley, Esq. in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Settlement ("Bradley Renewed Decl."), Docket No. 51, ¶¶ 10-11. In addition, as discussed further below, Plaintiffs engaged in at least some measure of informal and formal discovery, sufficient at least to value their claims in a seemingly-reasonable way. Finally, even if the Court were to conclude that discovery conducted here was on the lighter side insofar as typical class actions are concerned, there have been no objections filed in connection with any of the relief requested by way of the settlement or the accompanying request for fees/expenses/service payment, and only four individuals have opted-out.

As a result of the foregoing, the Court believes that a presumption of fairness operates with respect to this settlement. In any event, even if no presumption was in effect, this would not preclude the Court's determination that the settlement, in fact, meets the requisite fairness standard.

#### b. *The Settlement is Fair, Adequate, and Reasonable*

##### i. The Strength of the Case

Plaintiff's case centered on the meal-period,[3] rest-period and wage statement claims, with Plaintiff having – at least at one point-in-time – described the wage statement claim as the "main claim" in the case. Docket No. 30, at 5:10-15, 6:3-5. While there had been no efforts to test the sufficiency of those claims (or any of the derivative claims in the action) in-court, the merits of the issue must have been close enough for Defendants to feel as though settlement for a considerable sum of money – especially in light of the valuation range Plaintiff identified, referenced *infra* – was the better course. Plaintiff recognizes the customary risk she faced on the merits and the difficulty in achieving class certification, especially-so recently, in many types of wage-and-hour litigation. *See, e.g.*, Bradley Decl., ¶ 21. And, of course, even if she had successfully achieved non-settlement-related certification to the degree that she would have desired, there is always the possibility that any certified class(es) and/or subclass(es) might have been revisited somewhere down the line.

Whether the merits of Plaintiff's claims were considered strong or not, the

---

[3] The proposed final approval order dismisses Plaintiff's individual meal period claim with prejudice and without prejudice to any class members. *See* Docket No. 83, at 5:18-20.

settlement obviously achieves certainty for the class and subclasses. Thus, this factor certainly does not *dis*favor a reasonableness finding.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). This lawsuit was filed in California state court on October 17, 2017, and was removed to federal court shortly thereafter. There had been no pleadings- or merits-based motion practice in the case, meaning that if there were to be any in the case, it was still-to-come. Because Plaintiff never achieved class certification outside of the settlement context,[4] future certification proceedings would have also been necessary. Summary judgment proceedings may have followed (after at least some further measure of discovery). Though little had transpired thus far (apart from repeated proceedings focused on achieving preliminary approval of the settlement), the lawsuit could have continued for several more years, both at the trial and appellate levels. Time and resources spent in all those endeavors would have delayed and likely diminished any future result Plaintiff might have achieved on behalf of the class and subclasses. Consequently, attorneys' fees could have wound up eating up a substantial portion of any eventual likely recovery figure if Plaintiff's estimates of that figure were at all accurate.

Again, against all of this, the settlement agreement offers the parties immediate and certain relief. This factor therefore weighs in favor of approving the settlement.

### iii. The Risk of Maintaining Class Action Status Through-out Trial

As noted above, were Plaintiff eventually able to overcome the sometimes-significant hurdles to achieving class certification in wage-and-hour cases, there would be no certainty that certification would be maintained throughout the proceedings. This is clearly a risk worth taking into consideration, and one that favors a resolution of the parties' dispute via settlement.

### iv. The Amount Offered in the Settlement

"Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance…is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer*

---

[4] Even obtaining certification for settlement purposes was a lengthy endeavor here, necessitating five different hearing dates – and still further negotiations and proceedings after that fifth date – in order to achieve preliminary approval (and certification for that purpose). *See* Docket Nos. 28, 33, 45, 56, 62. At one point in time in the process, the Court had "grave concerns" about whether any class or subclass other than a single wage statement-related subclass could be certified (even for settlement purposes). *See* Docket No. 45, at pgs. 4-5 of 5. The reasons for the numerous proceedings on the preliminary approval motion were almost entirely (if not entirely) related to difficulties the Court had with certifying either the class or one or more of the proposed subclasses in the case (again, even for settlement purposes only). *See* Docket Nos. 28, 33, 45, 56, 62.

5

*Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965. *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action.") (omitting internal citation).

Plaintiff estimated a recovery, if successful at trial, of between $367,365 and $1.8 million. *See* Bradley Renewed Decl., ¶ 12. A settlement of $600,000 is therefore certainly reasonable, in this Court's view. In addition, with only four opt-outs (and 7,470 individuals consequently set to receive a distribution from the settlement) Plaintiff has informed the Court of an average estimated payment (assuming the Court were to award the full amount in every category requested) of $45.11. *See* Bradley Decl., ¶ 12; Kline Decl., ¶¶ 11, 14; Kline Supp. Decl., ¶¶ 11, 14-15. The Court has years of experience supervising settlements in wage-and-hour class litigation and the average recovery figure is well-within-reason for settlement of such suits.

As a result, the Court believes that the amount offered in settlement reflects a fair compromise and supports settlement.

> v. The Extent of Discovery Completed and the Stage of the Proceedings

A class plaintiff must be armed with sufficient information about the case to have been able to reasonably assess strengths and value and to broker a fair class settlement. Plaintiff's counsel conducted some measure of informal and formal discovery – involving special interrogatories and demands for production of documents, *see* Docket No. 80, at 13:21-22 – prior to mediation. *See* Bradley Renewed Decl., ¶¶ 7, 10. They then undertook some additional discovery once they appeared to have run into a roadblock in the preliminary-approval process. *See id.*, ¶ 11. Plaintiff reports that Defendants produced "nearly thousands of documents" (though what that phrase means is somewhat unclear), made up of "wage and hour policies, including meal and rest breaks, time keeping policies, time and wage records, and . . . business organization charts." Docket No. 80, at 13:22-25.

While clearly more discovery would have been taken – at some expense – had this case proceeded, the information Plaintiff and her counsel possessed allowed them to feel comfortable about their ability to prove their case and to value their potential recovery. *See* Bradley Renewed Decl., ¶¶ 8, 12, 31. The Court certainly sees no reason to doubt that Plaintiff was in a sufficient position to know the strengths (and weaknesses) of her case, its value, and whether or not the settlement figure "output" properly accounted for those "inputs."

> vi. The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are

most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). Obviously, class counsel – who are experienced in employment litigation and wage-and-hour litigation in particular, *see* Bradley Decl. ¶¶ 15, 18 – consider the settlement to be fair, adequate and reasonable. *See* Bradley Decl., ¶ 24.

This factor therefore weighs in favor of approving the settlement.

### vii. The presence of a governmental participant

There is no indication that any governmental entity participated in the settlement of this case or that any government action led to Plaintiff's commencement of the case. Yet, notice was successfully given both to California's Labor and Workforce Development Agency and in compliance with 28 U.S.C. § 1715. *See* Bradley Renewed Decl., ¶ 49; Docket No. 57, at 6:25-7:2. This factor is therefore neutral.

### viii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action [*sic*] are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, after Plaintiff successfully delivered notice to all but 86 of 7,474 class members, there have been *no* objections whatsoever, and only four individuals have opted out. *See* Kline Supp. Decl., ¶¶ 11, 15-16. Therefore, this factor fairly obviously strongly supports approving the settlement.

### ix. Signs of Collusion

There is nothing before the Court, either explicitly or implicitly, which suggests that the instant settlement was in any way the product of collusion. *See* Bradley Renewed Decl., ¶¶ 10-11, 32. As noted, the parties achieved settlement following two mediation sessions, and engaged in re-negotiations when the Court struggled to see how preliminary approval could be achieved to the extent originally-desired. *See* Bradley Renewed Decl., ¶¶ 10-11.

### x. Adequate Representation of the Class (Rule 23(e)(2)(A))

More than anything else, Plaintiff and her counsel demonstrated their adequacy – despite the Court's occasional concerns in that regard – through their dogged attempts to obtain preliminary approval of this settlement. The Court does not hesitate at this juncture to conclude that they have adequately represented the members of the class and subclasses.

### xi. Arm's-Length Negotiation (Rule 23(e)(2)(B))

As noted multiple times above, the parties took part in two mediations and engaged in further negotiations in response to the Court's earlier concerns about whether it could certify the class/subclasses and, consequently, preliminarily approve this settlement. Moreover, under the settlement, there is no reversion to Defendants.

### xii. Adequate Relief for the Class (Rule 23(e)(2)(C)

The Court has already considered above "the costs, risks, and delay of trial and appeal."

With respect to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," anyone who has not opted-out will receive payment proportional to how long they worked and their membership in the class and two subclasses.

"[T]he terms of any proposed award of attorney's fees, including timing of payment" will be discussed further in connection with the Court's consideration of the attorney's fee motion, *infra*. There is nothing here to trouble the Court in connection with a determination that the settlement is fair, adequate and reasonable.

> xiii. Equitable Treatment of Class Members (Rule 23(e)(2)(D)

Pegging payments to the length of work and, of course, to their membership in one or more subclasses (in addition to the class) is an equitable method for treating the members of the class and subclasses. Plaintiff is the only class member who will be treated differently, but service payments (by whatever name employed) for class representatives are well-established as legitimate in the Ninth Circuit, and there is no decision post-dating the amendments to Rule 23 which suggest that they are no longer appropriate due to Rule 23(e)(2)(D).

> c. *Conclusion re Reasonableness of Settlement*

Upon consideration of the above-stated factors, the Court concludes that the settlement reached in this case is reasonable. It therefore grants the motion for final approval of the settlement.

3. Attorneys' Fees and Expenses

Plaintiff's counsel moves for approval of their request for $200,000 in attorneys' fees, representing 33.3% of the settlement amount, reimbursement of $15,000 in costs, and a "service payment" of $5,000 to Plaintiff.[5]

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Jones*, 654 F.3d at 941. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

---

[5] In approving the settlement, the Court would also be approving payment of $15,000 to the California Labor & Workforce Development Agency in connection with Plaintiff's Private Attorney General Act ("PAGA") claim, and $28,000 to the claims administrator. *See* Bradley Decl., ¶¶ 11, 39. The portion of the settlement attributed to the PAGA claim would appear to be reasonable, and the class administrator has certainly put in work justifying the $28,000 figure. *See* Kline Decl., ¶¶ 3, 18. As with the attorneys' fees, costs and service payment, the notice sent to the class reflected both of these amounts, *see id.*, Exh. A, and, again, no class member has objected to this settlement (or to any deduction from the settlement fund).

Where jurisdiction is based upon diversity, California law controls whether an attorney is entitled to fees and the method of calculating such fees. "California has long recognized, as an exception to the general American rule that parties bear the costs of their own attorneys, the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 488-89 (2016). In awarding fees in connection with a common fund, courts generally use either a percentage method or a "lodestar" method. "The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts." *Id.* at 504. In *Lafitte*, the California Supreme Court recently affirmed a trial court's decision to employ the percentage-of-the-fund method with a "lodestar cross-check" (without *requiring* a lodestar cross-check). *See id.* at 488, 503, 506.

In the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272. The advantages of using the percentage method have been described thoroughly by other courts, and need not be repeated here. *See, e.g.*, *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1374-77 (N.D.Cal.1989) (collecting authority and describing benefits of the percentage method over the lodestar method). The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund. *See Paul, Johnson*, 886 F.2d at 271-72.

There is no question that Plaintiff's counsel should benefit from the common-fund doctrine here.[6] Counsel took up a case, on contingency, that relied on certification for value, at a time when certification of such cases appears to be getting increasingly difficult to obtain. They were able to achieve that interim goal, at least for settlement purposes (though not without multiple court proceedings to that end). Counsel achieve a significant result in this case (before much of the discovery-based delay and expense associated with the case would have kicked-in), with no possibility of reversion to Defendants and no need for a claims process. Certainly, the result achieved for the class (and subclasses) is deserving of some measure of reward.

However, Plaintiff's presentation has not convinced the Court that it should award fees above the Ninth Circuit benchmark of 25% of the settlement figure. *See, e.g.*, *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*). While counsel reports that the lodestar figure is actually in excess of the $200,000 33.3% amount requested, that is at least partially due to rates that are – in this Court's experience – on the high-side of reasonable, if they are reasonable at all. *See* Bradley Decl.[7], ¶¶ 28-32.

---

[6] The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50. *Laffitte* presents these factors as ones to take into consideration under the lodestar approach in deciding whether to apply a positive or negative "multiplier." 1 Cal.5th at 489.

[7] Plaintiff's counsel submitted identical declarations in support of both the final approval motion and the fee motion. The Court cites to only one of them, for simplicity purposes.

Moreover, as noted throughout herein, counsel had to repeatedly address flaws the Court perceived in the preliminary approval hearing, work that could have been avoided had more care and thought been put towards Plaintiff's initial submission in that regard. In addition, simply because counsel expected that it would receive a "risk enhancement" if Plaintiff prevailed (in particular if "the case was pushed to the brink of trial and heavy costs and time were incurred" – neither of which is true in this action), *see* Bradley Decl., ¶¶ 22, 29-32 – is not a reason this Court credits for awarding fees above the 25% figure.

The case was very-lightly-litigated before the parties reached a settlement. While, on the one hand, this allowed counsel to achieve a result for the members of the class and subclasses without eating away at it with a large amount of attorney work and billed time, it also indicates that the relative effort expended to achieve that result (outside of the repeated attempts to achieve settlement-related certification, which speaks more than anything to questions regarding the decision to proceed class-wide here at all, along with repeated shortcomings in Plaintiff's submissions to that end) does not compare particularly-favorably with other class settlements the Court has overseen so as to justify a higher-percentage recovery.

As such, the Court will award counsel 25% of the settlement figure, or $150,000. The difference between the $200,000 requested and the $150,000 awarded will add to the distribution to the members of the class and subclasses, raising the $45.11 average recovery.

Counsel also requests a costs award in the amount of $8,684.43, less than the $15,000 figure that counsel might have requested as announced in the notice sent to the class. *See* Bradley Decl., ¶ 36; Kline Decl., Exh. A; Docket No. 81, at 2:16-17. There does not appear to be any reason the costs should not be reimbursed. The compensable expenses – for experts, investigators, travel expenses, filing fees and mediation costs were reasonably incurred in connection with services that are, in this Court's experience, customarily billed to clients. *See* Bradley Decl., ¶¶ 36-38 & Exh. A. And, again, the Court received no objections. The Court will therefore award the full $8,684.43 in costs requested.

Finally, the fee motion also asks for a "service payment" to Plaintiff in the amount of $5,000. This too was disclosed in the notice sent out to the class, *see* Kline Decl., Exh. A, and, again, there were no objections to the settlement (or to any of the proposed/requested disbursements from the settlement amount).

The decision whether to award an incentive payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g., Dunleavy*, 213 F.3d at 458, 462. The criteria courts may consider in determining whether to make an incentive award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (S.D. Cal. 1995).

The amount requested here is well-within-reasonable in this Court's experience. Moreover, there is no doubt a basis to justify the amount. Plaintiff assisted her attorneys with the prosecution of the action (by gathering evidence, seeking and responding to discovery, giving insight into Defendants' policies and practices, and assisting with settlement considerations, totaling at least 40 hours of involvement), will potentially suffer a reputational risk secured as the result of suing a former employer, was exposed (at least theoretically) to an adverse costs and/or fees award should she have lost the lawsuit, and signed a general release (much-broader than the other members of the class/subclasses). *See* Bradley Decl., ¶¶ 40, 43-47; Declaration of Plaintiff in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Docket No. 80-2, ¶¶ 5-15, 18-20, 23. On balance, this information supports the requested service payment, despite the other class members' much-lower ultimate recovery.

The Court grants the motion in full in the amounts specified above.

### III. Conclusion

The Court will grant the request for final approval and the motion for fees, costs, settlement administration expenses, and service payment in full, with the exception of granting a fee award in the amount of $150,000 (which will necessitate an alteration in the proposed final approval order). All money other than that awarded here is to be included in the net settlement fund for distribution to the class/subclasses.